Case No.: **16-12049**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

**OCHEESEE** CREAMERY, LLC,
Plaintiff - Appellant,
v.
ADAM H. **PUTNAM**, in his official capacity as
Florida Commissioner of Agriculture, *et al.*,
Defendants - Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Case No: 4:14CV621-RH/CAS
(Honorable Robert L. Hinkle)

_____

### APPELLEES' ANSWER BRIEF
*Commissioner of Agriculture and Bureau Chief of Dairy Industry*

_____

JONATHAN A. GLOGAU
Chief, Complex Litigation
Fla. Bar No. 371823
jon.glogau@myfloridalegal.com
ASHLEY E. DAVIS
Assistant Attorney General
Fla. Bar No. 48032
ashley.davis@myfloridalegal.com
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300, ext. 4660

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure, and Local Rule 26.1-1, 11th Circuit Rules, the Commissioner and Bureau Chief file the following certificate of interested persons and corporate disclosure statement containing only persons and entities omitted from the certificates contained in previously filed briefs and therefore added here:

Department of Agriculture and Consumer Services – agency of Appellees

Institute for Justice, Inc. – law firm of Appellant's counsel

Mary Lou Wesselhoeft – co-owner of Appellant, Ocheesee Creamery, LLC

Office of the Florida Attorney General – agency of Appellees' counsel

Pamela Jo Bondi – Florida Attorney General

Paul Wesselhoeft – co-owner of Appellant, Ocheesee Creamery, LLC

## ORAL ARGUMENT

Pursuant to Rule 34, Federal Rules of Appellate Procedure, the Commissioner and Bureau Chief request oral argument.  This appeal involves conflated issues and strawman arguments which may require oral argument to assist the Court with resolution of this matter.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS......................................................................................iv

TABLE OF CITATIONS ....................................................................................vi

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES............................................................................2

STATEMENT OF THE CASE................................................................................5

SUMMARY OF THE ARGUMENT……………………………………………..10

ARGUMENT……………………………………………………………………...12

    I.      The District Court Correctly Granted Final Summary Judgment In Favor of the State and Against Ocheesee as to the "Skim Milk" Ban…………………………………………………………………...12

          A. The State's evidence is directly relevant and its admissibility has not been challenged on appeal………………….…………...14

          B. Labeling a product "skim milk" where it fails to meet the standard of identity for skim milk is inherently deceptive, unprotected speech that may be banned….……………………...15

          C. Labeling a product "skim milk" where it fails to meet the standard of identity for skim milk is at least potentially deceptive and may still be banned under *Central Hudson*………..19

          D. If any of those reasons is incorrect, the Court can still affirm…...26

II.    The District Court Correctly Held that the Compelled Label Issue
       was Not Yet Ripe and Even if it is Ripe, Final Summary Judgment
       In Favor of the State and Against Ocheesee Should be Affirmed....……31

CONCLUSION…………………………………………………………………....36

CERTIFICATE OF COMPLIANCE…………………………………………..37

CERTIFICATE OF SERVICE………………………………………………...38

# TABLE OF CITATIONS

## Federal Cases

*Abramson v. Gonzalez,*
  949 F. 2d 1567 (11th Cir. 1992) ..................................................... 17, 18

*Access Now, Inc. v. Southwest Airlines, Co.*,
  385 F. 3d 1324 (11th Cir. 2004) ...........................................................3

*American Meat Inst. v. U.S. Dep't of Agric.*,
  760 F. 3d 18 (D.C. Cir. 2014)....................................................... 18, 24

*Bd. of Trs. of State Univ. of New York v. Fox*,
  492 U.S. 469 (1989) ..............................................................................25

*Borgner v. Brooks*,
  284 F. 3d 1204 (11th Cir. 2002) ...........................................................9

*Carolene Products Co.*,
  304 U.S. 144 (1938) ..............................................................................22

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*,
  447 U.S. 557 (1980) ....................................................................... 12, 19

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................31

*Federal Security Administration v. Quaker Oats Co.*,
  318 U.S. 218 (1943) ....................................................................... 13, 21

*Ford Motor Co. v. Texas Dept. of Trans.*,
  264 F. 3d 493 (5th Cir. 2001)...............................................................27

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) ..............................................................................27

*Hebe Co. v. Shaw*,
  248 U.S. 297 (1919) ..............................................................................28

*Hutchinson Ice Cream Co. v. Iowa*,
   242 U.S. 153 (1916) ............................................................ 13, 22, 28

*Ibanez v. Florida Dep't. of Bus. and Prof'l Regulation, Bd. of Accountancy*,
   512 U.S. 136 (1994) ...........................................................................17

*In re R.M.J.*,
   455 U.S. 191 (1982) ................................................................... 15, 25

*International Dairy Foods Ass'n v. Boggs*,
   622 F. 3d 628 (6th Cir. 2010) ...........................................................15

*Magluta v. Samples*,
   162 F. 3d 662 (11th Cir.1998) ...........................................................13

*Malowney v. Fed. Collection Deposit Grp.*,
   193 F. 3d 1342 (11th Cir. 1999) ................................................... 31, 32

*Marek v. Singletary*,
   62 F. 3d 1295 (11th Cir. 1995) .........................................................3, 7

*Mason* v. Florida Bar,
   208 F. 3d 952 (11th Cir. ...................................................................18

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
   559 U.S. 229 (2010) ...........................................................................33

*Morris v. Ross*,
   663 F. 2d 1032 (11th Cir. 1989) .......................................................30

*Northern Virginia Women's Medical Center v. Balch*,
   617 F. 2d 1045 (4th Cir.1980) ..........................................................32

*Palmer v. U.S.*,
   340 F. 2d 48 (5th Cir. 1964) .............................................................29

*Parker v. Commonwealth of Kentucky, Bd. of Dentistry*,
   818 F. 2d 504 (6th Cir. 1987). .........................................................18

vii

*Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,*
496 U.S. 91 (1990) ................................................................ 17, 33, 34

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,*
413 U.S. 376 (1973) ...................................................................... 27, 32

*Rubin v. Coors Brewing Co.,*
514 U.S. 476 (1995) ............................................................................26

*U.S. v. 30 Cases, More or Less, Leader Brand Strawberry Fruit Spread,*
93 F. Supp. 764 (S.D. Iowa 1950) ........................................... 21, 22, 28

*U.S. v. Dotterweich,*
320 U.S. 277 (1943) ...........................................................................29

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
471 U.S. 626 (1985) ...........................................................................33

**State Cases**

*Anderson v. City of Tampa,*
164 So. 546 (Fla. 1935) ............................................................... 22, 28

*Conner v. Cone,*
235 So. 2d (Fla. 1970) .......................................................................23

*Logan v. Alfieri,*
148 So. 872 (Fla. 1933) .....................................................................23

**Federal Statutes**

21 U.S.C. § 331 ...................................................................................29

21 U.S.C. § 343(c) ...............................................................................3

21 U.S.C. § 343(q)(5)(D) .....................................................................16

21 U.S.C.A. § 301 ....................................................................... 21, 28

28 U.S.C. § 1291 ..................................................................................1

**State Statutes**

Fla. Stat. § 502.091 ...................................................................................6

Fla. Stat. 502.014(5).......................................................................... 3, 5, 33

Fla. Stat.§ 502.012(13)............................................................................33

**Federal Rules**

32(a)(5) Fed. R. App. P.............................................................................37

32(a)(6) Fed. R. App. P.............................................................................37

32(a)(7)(B) Fed. R. App. P. .......................................................................37

19(a)(1) Fed. R. Civ. P..............................................................................29

26.1 Fed. R. App. P................................................................................... ii

34 Fed. R. App. P.................................................................................... iii

**Federal Regulations**

21 C.F.R. § 101.3(e)...................................................................................3

21 C.F.R. § 101.9(c)(8)(iv) .......................................................................34

21 C.F.R. § 101.9(j)(1)..............................................................................16

21 C.F.R. § 130.10(b) .................................................................................6

**State Regulations**

Fla. Admin. Code 5D-1.001(1) ............................................................ 6, 42

Fla. Admin. Code 5D-1.001(1)(b) ............................................................3

## STATEMENT OF JURISDICTION

This is an appeal from the district court's order granting final summary judgment to Appellees, Commissioner of Agriculture and Bureau Chief of Dairy Industry, Florida Department of Agriculture and Consumer Services ("State"), and denying Appellant, Ocheesee Creamery, LLC's ("Ocheesee") motion for final summary judgment.  [Appx. VIII, 60][1]  The order on appeal is a final order reviewable pursuant to 28 U.S.C. § 1291.

---

[1]    Citations to the Appendix are to Ocheesee's appendix, [Appx. *, **, ***], where * is the volume number, ** is the appendix tab / docket number, and *** is the appendix page number, followed by any paragraph number in the document.

**STATEMENT OF THE ISSUES**

Ocheesee states that there is one issue on appeal: "whether the district court erred in ruling that Florida's prohibition on the Creamery's truthful use of the term 'skim milk,' and its requirement that the Creamery misleadingly label its product 'imitation skim milk,' do not violate the First Amendment." IB at 18. This improperly conflates two issues, the former, "skim milk" issue, being the only issue properly before this Court. The district court addressed what Ocheesee could *not* label its product – "skim milk" – but it did not address what Ocheesee *could* label its product. *See* [Appx. VIII, 60]. That is because of two reasons.

First, Ocheesee's forced speech challenge was only to a "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" label offered in *negotiations* for a permit that was later *denied* because it laid dormant for too long. [Appx. I, 1, 32 at ¶ 97] (challenging "Non-Grade 'A'" label); [Appx. II, 29-1, 110-16]; [Appx. VII, 28, 96] (explaining that offer was off the table and the permit was denied); [Appx. II, 28-9 & VII, 53, 234-35]. The district court therefore held that any issue of compelled or permitted speech was "not yet ripe." [Appx. VIII, 60, 91-92].

Second, Ocheesee *never* challenged any requirement that its product be labeled "imitation skim milk," which is the actual labeling requirement. *See* [Appx. I, 1]; [Appx. II, 29-1, 110-16]; *see also* [Appx. I, 28, 96-101] (explaining that "imitation skim milk" is actual the requirement, and then merely

2

*prophylactically* defending both it and the challenged "Non-Grade 'A'" label).

Indeed, even now, Ocheesee argues that there is no such "imitation" label

requirement in law.  IB at 33 ("The Florida Statutes do not include this additional

requirement, but merely prohibit mislabeling").[2]  No issue of compelled speech is

therefore properly before the Court.  *Access Now, Inc. v. Southwest Airlines, Co.*,

385 F. 3d 1324 (11th Cir. 2004).

Moreover, Ocheesee has not attacked the district court's order to the extent it

also denied Ocheesee's motion to strike the report and testimony of the State's

expert.  *Compare* [Appx. VIII, 60, 92] *with* IB at 18, 38-41 (merely arguing State's

expert opinions were irrelevant rather than inadmissible).   The issue of the

admissibility of the report and testimony of the State's expert has therefore been

abandoned.  *Marek v. Singletary*, 62 F. 3d 1295, 1298 n.2 (11th Cir. 1995).

Likewise, Ocheesee has abandoned the issue of ripeness as to its compelled speech

claims.  *Id.*; IB at 18, 55-59 (merely arguing that the compelled speech is

unconstitutional rather than that the issue is ripe).

---

[2]     Ocheesee is wrong.  Section 502.014(5), Florida Statutes, mandates that the State "shall be guided by and may conform to" the federal standards, and Rule 5D-1.001(1)(b), Florida Administrative Code, incorporates those standards, including 21 U.S.C. § 343(c) and 21 C.F.R. § 101.3(e), which deem products not conforming to the standard of identity to be misbranded unless the label says that it is "imitation," and "immediately thereafter, the name of the food imitated," *e.g.* "skim milk."  *See also* [Appx. I, 28, 82-83] (explaining these requirements); [Appx.VIII, 60, 87] (finding that the State has adopted the federal requirements).

3

The only issue on appeal is therefore properly restated as:

1.      Whether the district court erred in holding that the State can prohibit misbranding of a product as "skim milk," where it does not meet the standard of identity that all other "skim milk" achieves.

Nevertheless, out of an abundance of caution, the State will also address the second half of Ocheesee's issue presented, but restates it correctly as:

2.      Whether the district court erred in holding that whatever the product may be labeled is an issue that is not yet ripe because Ocheesee challenged a negotiated offer instead of the legal requirement.

## STATEMENT OF THE CASE

Ocheesee has attacked the standard of identity of skim milk under the free speech clause of the First Amendment.  Ocheesee wants to label its product "skim milk" even though it undisputedly fails to meet the standard requiring skim milk to be nutritionally the same as milk.  This is a problem because the State's unrefuted evidence shows that consumers expect skim milk to meet that standard of identity and would be nutritionally harmed and deceived if what they bought was an inferior product like Ocheesee's.  Maintaining consumer expectations and preventing nutritional harm were exactly why standards of identity were created in the first place, and why courts continually upheld bans on inferior milk products before there was a standard for milk.  The district court therefore correctly upheld the standard of identity of skim milk.  [Appx. VIII, 60].

### I.    Facts and Law Relevant to the Issues

The State has adopted the federal standard of identity for "skim milk" and applicable requirements.  [Appx. VIII, 60, 87]; Fla. Stat. § 502.014(5) (mandating that the State "shall be guided by and may conform to" the federal standards); Fla. Admin. Code Rule 5D-1.001(1) (incorporating those standards and the Grade 'A' Pasteurized Milk Ordinance ("PMO")); [Appx VIII, 60, 87] (finding that the State has adopted the federal requirements).  In relevant part, "skim milk" cannot be "nutritionally inferior" to whole milk and therefore the fat soluble vitamins A and

D that are removed when the fat is skimmed off "shall be added [back]."  21 C.F.R. § 130.10(b); *see* [Appx. I, 28, 82-83] (setting forth all of the related provisions); *see also* PMO, Appx. O, p. 350.  Reduced fat milk products that do not meet that standard of identity are prohibited from sale for human consumption. Fla. Stat. § 502.091.  They are not "Grade 'A.'"

It is undisputed that Ocheesee's product does not meet the standard of identity for "skim milk" because Ocheesee refuses to replace any of the vitamin A or D that it removes from the milk it modifies.  [Appx. I, 28-1] (email to Ocheesee with test results indicating its product lacked vitamin A and D, explicitly stating the State's requirement is that "if milkfat is removed from whole milk then vitamins A and D must be added to the skim product," directing when "these vitamins must be added," and including a link to the PMO with the page number that "describes and lists the requirements for Vitamin addition"); IB n.8 (Ocheesee "has not added or replaced any vitamin A or D in its skim milk"); [Appx. I, 1, 19 at ¶ 1] (Ocheesee "refuses to inject its skim milk with any additives"); *see also* IB at 27-28.[3]  It is also undisputed that the only study of consumer expectations of skim

---

[3]     Despite being a "non-issue," Ocheesee continues to raise the fact that the stop sale orders only relied upon the lack of vitamin A, and did not refer to vitamin D.  IB at n.8; [Appx. II, 29-2] (stop sale orders); IB at 31.  Ocheesee therefore only ever mentions vitamin A in its brief.

If measurable amounts of vitamin A *or* D is removed however, the law requires that it be replaced.  21 C.F.R. § 130.10(b); *see* [Appx. I, 28, 82-83] (setting forth all of the related provisions); *see also* PMO, Appx. O, p. 350.  The

milk, and Ocheesee's product specifically, found that consumers would be harmed in at least two separate ways by a product labeled skim milk that did not contain replacement vitamin A or D. [Appx. I, 28-4] (Dr. Wright Report). Misbranding will cause nutritional harm and harm to the consumer's expectations that "skim milk" is nutritionally the same as milk. *Id.*

Also relevant is that during the course of this litigation, Ocheesee's other products were found in interstate commerce. [Appx. I, 28-2 and 28-3]; [Appx. VIII, 60, 88] (finding that however they got there, Ocheesee's products were in Alabama). Ocheesee uses the same bottle for all of its products, [Appx. VII, 45, 63 at ¶¶ 16-17; I, 28-5, 200-01], is located near the Alabama border, *see* [Appx. VII, 45, 61 at ¶ 2], and, whether Ocheesee knows about it or not, *see c.f.* [Appx. VII, 45, 61-62 at ¶¶ 4-7], a farmers' market in Alabama advertises and sells its products, [Appx. I, 28-2].

## II.    Relevant Procedural History

---

test results upon which the stop sale orders were based found that neither vitamin A or D was replaced as required. [Appx. I, 28-1]. The fact that the stop sale orders only mentioned one basis to stop sale is unimportant. Either basis was sufficient on its own to stop sale. Ocheesee was presented with the test results and explicitly told that both vitamins must be replaced. [Appx. 28-1]. But again, this is a "non-issue." IB at n.8 (stating that Ocheesee "does not object" to disclosing vitamin D has not been "added or replaced"); *id.* at 28 ("this would require adding vitamin A (and possibly vitamin D, *see supra* n.6 [sic])").

Ocheesee filed a three count complaint on November 20, 2014.  [Appx. I, 1].

Count I was a claim for "Censorship of the Words 'Skim Milk,'" challenging the

ban on labeling its product "skim milk." [Appx. I, 1, 30-31 at ¶¶ 76-92].  Count II

was a claim for "The Confusing and Misleading Compelled Label," challenging

the compelled label "Non-Grade 'A' Milk Product, Natural Milk Vitamins

Removed."  [Appx. I, 1, 31-33 at ¶¶ 93-111].  Count III was a claim for

"Censorship of Additional Truthful and Verifiable Information."  [Appx. I, 1, 34-

36 at 112-31].  Ocheesee never advanced Count III.  *See* [Appx. I, 1, 95].  All of

Ocheesee's claims were argued to be violations of freedom of speech under the

First Amendment, applied to the State through the Fourteenth Amendment.

The parties all agreed that this action could be resolved on summary

judgment.  [Appx. 28 and 29]; DE 19, 4(j).  The parties filed motions on June 22,

2015 [Appx. I, 28 and II, 29], responses on July 27, 2015 [Appx. VII, 49 and 50],

and replies on August 10, 2015 [Appx. VII, 53 and VIII, 55].  Ocheesee moved to

strike the State's expert testimony [Appx. VIII, 51] and the State responded [Appx.

VIII, 54].  The district court heard oral argument on August 19, 2015.  [Appx. VIII,

56 and 58].

### III.    Rulings Presented for Review

On March 30, 2016, the district court entered its order granting the State's

motion for summary judgment, and denying Ocheesee's motion for summary

8

judgment and motion to strike.  [Appx. VIII, 60, 92].  Ocheesee timely filed a

notice of appeal on April 28, 2016.  Ocheesee waived any argument that the

district court erred in denying its motion to strike, or erred in holding its compelled

speech claim was not yet ripe, by not raising them in its Initial Brief.  *See generally*

IB; *id.* at 18 (omitting the issues in its statement of issues on appeal); *id.* at 38-41

(arguing expert merely studied the wrong the issue); IB at n.17 ("this Court does

not need to determine the validity of these conclusions"); *id*. at 56 (failing to

address ripeness in only argument about compelled labels).

## IV.    Standards of Review

Orders either granting or denying final summary judgment, or determining

whether restrictions on commercial speech are constitutional, are all reviewed *de

novo*.  *Borgner v. Brooks*, 284 F. 3d 1204, 1208 (11th Cir. 2002).  The question of

ripeness is a jurisdictional issue that is reviewed *de novo*.  *Reahard v. Lee County*,

30 F. 3d 1412, 1415 (11th Cir. 1994), *cert. denied,* 514 U.S. 1064 (1995).

# SUMMARY OF THE ARGUMENT

It is inherently deceptive to pass off a product as "skim milk" where it fails to meet the standard of identity for that term because it is concededly nutritionally inferior to every other bottle and carton of skim milk on the shelf.  It is unrefuted that consumers expect all skim milk to have at least the same vitamin content as milk.  Ocheesee's product concededly does not and there is no way for a consumer to know that.  Ocheesee's product does not have a nutrition label to enable consumers to distinguish between it and all other skim milk.  Labeling a product "skim milk" when it is not, is unprotected speech that may be banned.

Even if it was not inherently deceptive to label Ocheesee's product "skim milk," it is at least potentially deceptive.  The ban is nevertheless constitutional however, because it directly achieves the State's interests in preventing nutritional harm and fraudulent substitution of inferior products in a proportional fit.  Standards of identity were created to achieve those very interests and a ban on misappropriation is perhaps the best fit for preventing harm from misappropriation.

The district court's order should therefore be affirmed.  This Court may also affirm because any ban on labeling Ocheesee's product "skim milk" is incidental to the ban on even selling that product for human consumption.  No protected speech interest is therefore infringed.  Additionally, Ocheesee will still be bound

by the same federal requirements if the state ban were invalidated because Ocheesee's product cannot be kept from interstate commerce.

Any compelled or additional speech issues were not ripe because Ocheesee never challenged the actual legal requirement and the label it did challenge was simply an offer in expired negotiations. Even if the issue was ripe, the Court should still affirm because the challenged label "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" is reasonably related to the State's interests and even directly advances them in a proportional fit. It appropriately explains what Ocheesee's product is in a way that distinguishes it from skim milk to avoid the particular deception involved in using that term.

**ARGUMENT**

The district court's order granting final summary judgment in favor of the State and against Ocheesee should be affirmed.  The State met its burden and Ocheesee's arguments to the contrary have been strawman arguments supporting conflated issues.

## I.    The District Court Correctly Granted Final Summary Judgment In Favor of the State and Against Ocheesee as to the "Skim Milk" Ban

Ocheesee is challenging the ban on labeling its product "skim milk" as a violation of its right to freedom of speech under the First Amendment, facially, and as applied to it because its product is wholesome and not harmful and meets the dictionary definition of "skim milk."  If speech concerns unlawful activity or is misleading, however, then the speech is not entitled to First Amendment protection.  *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 566 (1980).  The district court correctly found that labeling Ocheesee's product "skim milk" is inherently deceptive and therefore unprotected speech.  [Appx. VIII, 60, 89-91].  Alternatively, the district court found that even if that label was not inherently deceptive, unprotected speech, "the ban on calling the product 'skim milk' still would survive *Central Hudson* scrutiny."  [Appx. VIII, 60, 91].  The district court therefore correctly granted summary judgment in favor of the State and against Ocheesee as to the "skim milk" ban on independent grounds.  This Court should affirm.

12

Indeed, Ocheesee's assertion, "if sustained, would initiate a frontal assault on the Food, Drug, and Cosmetic Act and its state counterparts, whose validity was established long ago." [Appx. VIII, 60, 89-90]. The purpose of standards of identity is "to protect the consumer from 'economic adulteration,' by which … the proportion of more expensive ingredients diminished, so as to make the product … inferior to that which the consumer expected to receive when purchasing a product with the name under which it was sold." *Federal Security Administration v. Quaker Oats Co.*, 318 U.S. 218, 230-32 (1943) (citing legislative history). It does not matter that the product is "not in itself deleterious." *Id.* Banning products that fail to meet the standard of identity has an "object plainly being to secure the presence of the nutritious elements mentioned in the act, and to save the public from the fraudulent substitution of an inferior product that would be hard to detect," even if the product "should be admitted to be wholesome." *Hebe Co. v. Shaw*, 248 U.S. 297, 302-03 (1919); *Hutchinson Ice Cream Co. v. Iowa*, 242 U.S. 153, 159 (1916). The product's wholesomeness and otherwise lack of harmfulness is irrelevant.

This Court could also affirm summary judgment in favor of the State for either of two additional reasons. *Magluta v. Samples,* 162 F.3d 662, 664 (11th Cir.1998) (per curiam) (noting the rule that "we may not reverse a judgment of the district court if it can be affirmed on any ground, regardless of whether those

13

grounds were used by the district court"). First, the sale of Ocheesee's product is unlawful and any speech restriction is therefore merely incidental, unprotected speech. Second, if the challenged state ban is invalidated, Ocheesee would still be bound by the same ban in federal law and therefore the Court cannot redress its harm.

### A.    The State's evidence is directly relevant and its admissibility has not been challenged on appeal

What reasonable consumers expect skim milk (or milk for that matter) to be is at the heart of whether labeling a product like Ocheesee's as "skim milk" is deceptive – either inherently or potentially. It is undisputed that Ocheesee's product is nutritionally inferior to other milk. If consumers expect differently, then they will be deceived and nutritionally harmed. That is exactly what the State's expert, Dr. Wright, found. [Appx. I, 28-4] (Dr. Wright Report). Indeed, preventing deception from passing off nutritionally inferior milk products as equivalent has *always* been a concern of the courts and a reason why standards of identity were created in the first place. *See* [Appx. I, 28; VII, 49].

Dr. Wright found that almost all consumers buy milk for its nutritional value or nutritional value and taste, [Appx. I, 28-4, 128-29], and "[o]verwhelming[ly], consumers expected skim milk to contain the same vitamin content as whole milk," [Appx. I, 28-4, 129-30]. These results are captured by what consumers thought about Ocheesee's product in particular. "By and large, consumers found that the

14

packaging of Ocheesee Creamery," which is the same for all of its bottled milk products, [Appx I, 1, ¶¶ 18-19], "appeared 'wholesome' and 'pure' and expected that the product would have the same vitamin content as other milk products" when told it was "skim milk." [Appx I, 28-4, 132-33]; *see id.* at 128-31 (establishing that consumers expect all milk products – whether skim or not – to have the same vitamin content).

Ocheesee does not argue with the validity of this study or its findings. Rather, Ocheesee argues it just does not address any of the issues in this case. IB at 38-41. But the fact that consumers expect a product labeled "skim milk" to be nutritionally the same as milk and other "skim milk," and therefore meet the very part of the standard of identity at issue in this action, exactly addresses the issues in this case: whether labeling a nutritionally inferior product "skim milk" is either inherently or potentially deceptive.

**B.    Labeling a product "skim milk" where it fails to meet the standard of identity for skim milk is inherently deceptive, unprotected speech that may be banned**

Speech may be prohibited entirely if it is "inherently likely to deceive" or "where the record indicates" that it "has in fact been deceptive." *International Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 636 (6th Cir. 2010) (quoting *In re R.M.J.,* 455 U.S. 191, 202–03 (1982)). The district court correctly found that labeling a product "skim milk" where it fails to meet the standard of identity is

15

inherently deceptive.  [Appx. VIII, 60, 89-90].  It would imply that the product is

fundamentally the same as other "skim milk" – *on the very characteristic*

*consumers would expect similarity* – when it is concededly not the same.  What is

worse, is that, as to Ocheesee's product, consumers have no way to evaluate the

nutritional differences by comparing nutrition labels, if they even looked.  *See*

[Appx. I, 28-5, 149:10-11; 150:23—151:2] (explaining that consumers do not

typically read labels other than the principle display panel on the front); [Appx I,

28-5, 165:5-9] (Ocheesee's expert) (same); *Hebe Co.*, 248 U.S. at 303 (noting

"consumer in many cases never sees [the label]").  Ocheesee's product does not

have a nutrition label.  *See* 21 U.S.C. § 343(q)(5)(D); 21 C.F.R. § 101.9(j)(1)

(exempting small businesses from the nutrition labeling requirement); *see* [Appx I,

28-5, 200-01] (picture of bottles, front and back).

Moreover, the district court correctly found that any failure to realize that all

"skim milk" sold has had the skimmed vitamins replaced just exemplifies "how

well the standard of identity and nutritional standard have worked," and is "[f]ar

from a condemnation of the standard."  [Appx. VIII, 60, 90-91].  The district court

relied on the only study to gauge consumer expectations of skim milk to "confirm[]

this conclusion: most consumers buy milk for its nutritional value, and most expect

skim milk to include the same vitamin content as whole milk."  [Appx. VIII, 60,

91].  Ocheesee's product was specifically found to be deceptive as well.  [Appx I,

28-4, 132].  Products that purport to be skim milk, but are concededly nutritionally inferior, are inherently deceptive because they violate consumer expectations on that very criteria and therefore labeling them "skim milk" is unprotected speech.

It does not matter that Ocheesee's product meets any dictionary definition. The dictionary is not the measure of inherent deception, despite what Ocheesee argues.  *See* IB at 46-50.  The definition that matters is the standard of identity. Indeed, none of the "skim milk" on the grocery shelf meets the dictionary definition; rather, it all meets the standard of identity.  That is the point. Ocheesee's product is unlike all of the "skim milk" on the shelf on the very characteristic consumers expect to be the same and no one would know.  It is therefore inherently misleading to misappropriate the label.

Nor do the cases Ocheesee cites support the proposition that speech is not inherently misleading if it meets the dictionary definition.  *See* IB at 46-50.  The professionals at issue in those cases were allowed to call themselves psychologists, certified specialists, dentists authorized to perform orthodontia, and 'AV' Rated attorneys because they were all *authorized* (all but one of them by law), to practice as such professionals.  *Abramson*, 949 F. 2d at 1576 ("for they are in fact psychologists"); *Peel*, 496 U.S. at 2288 ("the facts stated on petitioner's letterhead [Certified Civil Trial Specialist] are true and verifiable"); *Ibanez*, 512 U.S. at 138 ("she is also a Certified Public Accountant (CPA), licensed by respondent ...");

17

*Parker*, 818 F. 2d 504 ("'orthodontics,' 'brackets,' and 'braces' … are not false, but actually describe procedures which a general practicing dentist is *permitted to perform under state law*"); *Mason*, 208 F. 3d at 956 ("The Bar does not view the statement that an attorney is ''AV' Rated' as 'potentially misleading.' In fact, the Bar permits reference to one's 'AV' rating without a disclaimer …").  It made no sense that the professionals could legally practice as a certain professional, like a psychologist, but could not call them self a "psychologist."  The Eleventh Circuit emphasized this in *Abramson* when it stated: "in *Peel* and *Parker*, the key finding was … that each was engaging in professional activity *permitted under state law*." *Abramson*, 949 F. 2d at 1577.  The government definition did not fit with what was legally permitted.  There was not any mismatch between the government definition and the dictionary definition.

Consumers expect products that have a standard of identity to meet that standard, because that is what they have come to know the product as.  Most consumers buy milk for its nutritional value and overwhelmingly expect that products labeled skim milk contain the same vitamin content.  [Appx. I, 28-4]. The existence of, and persistence over time of a standard of identity, engrained the expectation in consumers that a product labeled with a standardized term fits the definition *promulgated for it.  See American Meat Inst. v. U.S. Dep't of Agric.*, 760 F. 3d 18, 23-24 (D.C. Cir. 2014) (upholding country of origin labeling for meat

noting the "time-tested" consensus created by the requirement's long history "lifts it well above idle curiosity" to continue mandating it) (quotations and citations omitted). If consumers *discovered* that a product purporting to be "skim milk" was nutritionally inferior to other milk products, then they would have "strong, negative feelings" including anger and disappointment. [Appx I, 28-4, 133]. Some would even feel "violated," "lied to," or "deceived." [Appx. I, 28-4, 130-31]. As a result, the vast majority of consumers would not purchase that "skim milk." [Appx. I, 28-4, 131]. That is because that minimum vitamin content is what they expect and therefore assume is in their skim milk.

C.   **Labeling a product "skim milk" where it fails to meet the standard of identity for skim milk is at least potentially deceptive and may still be banned under *Central Hudson***

Even if it was not inherently deceptive for a nutritionally inferior product to misappropriate the label "skim milk," it is at least potentially deceptive and may nevertheless be banned if the State shows that: A) it has a substantial interest in the ban; B) the ban directly advances that interest; and C) the ban is not more extensive than necessary. *Central Hudson*, 447 U.S. at 564. The district court correctly found that the State has a substantial interest in preventing nutritional harm and deception. Ocheesee has never argued against the validity of the ban on

19

the basis of the State's articulated interest in preventing nutritional harm.[4]  *See* IB. This Court could affirm on that basis alone.  Further, Ocheesee "has always conceded that the State has a substantial interest in combatting deception."  IB at 24.

Ocheesee argues only that the ban fails the last two prongs of *Central Hudson* using the deception interest.  The district court correctly found however, that banning the label "skim milk" for products that fail to meet the standard of identity directly achieves the interest in preventing deception in a proportional fit. Indeed, Ocheesee's product is the perfect example.  Labeling Ocheesee's nutritionally inferior product "skim milk" would violate the precise expectation consumers have for skim milk and result in nutritional harm and deception.  The district court therefore correctly held that the "skim milk" ban passes constitutional muster under the *Central Hudson* test.  [Appx. VIII, 60, 91].

> 1.  The ban directly advances the State's interest and is not more extensive than necessary

The district court correctly found that the interest in establishing a standard of identity (and nutritional standards) is directly advanced by the ban.  "[I]ndeed, the match is nearly perfect."  [Appx. VIII, 60, 91].  The district court also found that "the restriction is not more extensive than is necessary to serve that interest; a

---

[4] To the extent Ocheesee ever challenged the nutritional interest below, it misstated the interest and attacked a strawman.  *See* [Appx. VII, 49, 134-35].

standard of identity works only if products that do not meet the standard cannot appropriate that identity." [Appx. VIII, 60, 91].

"Establishing uniform meanings and nutritional standards was a major goal of statutes of this kind [establishing standards]." [Appx. VIII, 60, 89] (citing *Federal Security Administration v. Quaker Oats Co.*, 318 U.S. 218 (1943) and *Hebe Co. v. Shaw*, 248 U.S. 297 (1919)). Standards of identity were authorized to prevent the real harms found by Congress of degrading integrity of food products and consumers buying an article which was different from what it purported to be. *Quaker Oats Co.*, 318 U.S. 218 (explaining legislative history). The adoption of a standard of identity is the recognition that "consumer confusion would ensue" "in the absence" of that standard. *Id.* at 228-29; 230-31 ("The provisions for standards of identity thus reflect a recognition by Congress of the inability of consumers in some cases to determine, solely on the basis of informative labeling, the relative merits of a variety of products superficially resembling each other"). Even in the 1950s, it was "a matter of common knowledge that sin[c]e the enactment of the Food, Drug & Cosmetic Act of 1938, 21 U.S.C.A. § 301 *et seq.*, consumers of food products have come more and more to rely upon the uniform quality of standardized commodities, generally the effect of which is to make all less wary and more credulous." *U.S. v. 30 Cases, More or Less, Leader Brand Strawberry*

21

*Fruit Spread*, 93 F. Supp. 764, 767-78 (S.D. Iowa 1950) (explaining legislative history and case law regarding standards of identity and misbranding).

The concern has always been the inability of reasonable consumers to distinguish between nearly indistinguishable products passed off as the same, but inferior in some consumer expectation.  For milk products specifically, one of those expectations and concerns is nutrition.  That is why when "skim and lower fat milks became popular, the reduction of vitamin A levels with fat reduction became an issue since whole milk was considered a good source of vitamin A."  [Appx I, 28-8, 52].  "This was addressed in the 1978 PMO under the standards of identity for lowfat and nonfat milks." *Id.*

Before that standard of identity, "skimmed milk" like Ocheesee's was, for hundreds of years, used as pig slop.  *See* ADAM SMITH, AN INQUIRY IN THE NATURE AND CAUSES OF THE WEALTH OF NATIONS, 203-04 (Edwin Cannan ed., London: Methuen & Co., Ltd. 5th ed. 1904) (1776).  It was treated as a byproduct of butter and cream production and inferior in character and outright *banned* until vitamin replacement began to make skim milk what we now expect it to be.  *E.g. Hebe Co.*, 248 U.S. at 303; *Carolene Products Co.*, 304 U.S. 144 (1938); *Hutchinson Ice Cream Co.*, 242 U.S. 153; *see also Anderson v. City of Tampa*, 164 So. 546, 678 (Fla. 1935), *on rehr'g* (upholding ban on using skimmed milk to make chocolate milk "since the character of milk is difficult for an unskilled person to detect, and

22

the health and vitality of consumers … are impaired by the constant use of milk of an inferior grade"); *Logan v. Alfieri*, 148 So. 872, 440 (Fla. 1933) (noting that it is "well recognized" "that milk is a valuable and universal food product" "peculiarly liable and subject to … adulteration" and "may seriously affect the public health" if produced or distributed improperly and that even "strict and burdensome" regulations are needed "to guarantee to the consumer that protection which the sovereignty owes to him").

An integral part of standardization involves distinguishing products that do not meet the standard, in order to prevent deception and harm. For products like milk, that are otherwise indistinguishable, including in nutritional content, this is especially true. The Florida Supreme Court has recognized this ultimate need to *distinguish* between milk and products like Ocheesee's when it said that filled milk[5], imitation milk, and "all other dairy and nondairy products must be properly labeled so that the consumer will not be confused." *Conner v. Cone*, 235 So. 2d 492, 497 (Fla. 1970). The district court correctly found that the ban against labeling a product like Ocheesee's as "skim milk" directly advances the State's

---

[5] Filled milk is just as nutritionally inferior as Ocheesee's product. It is milk without the cream or vitamins A and D, with nutritionally inferior fat added to it, like coconut oil. *See Conner*, 235 So. 2d at 494. The same nutritional harm and fraud would occur "because of the identical taste and appearance of filled and pure milk, people could be sold or served one for the other without being aware of the difference." *Id.*

interest in preventing deception in a proportional fit. Nevertheless, this Court can affirm under *Central Hudson* using only the undisputed interest in preventing nutritional harm.

> a.    Ocheesee's argument about lack of advancement is incorrect

Ocheesee argues that there is a lack of advancement by wholly ignoring the evidence of deception shown by the State on the faulty premise that it studied the wrong issue. IB 52-55, 59-60. Ocheesee then simply equates this case with the cases it cites where the government did not put forth any evidence of deception. *Id.* at 52-55. Here, there is a harm of deception that the State concededly has a sufficient interest in preventing. Congress established standards of identity precisely because of that harm and the State presented unrefuted evidence that consumers expect "skim milk" to be something Ocheesee's product is concededly not.

> b.    Ocheesee's argument about lack of fit is incorrect

Ocheesee argues that there is a lack of fit between the ban and the State's interest in preventing deception solely because it came up with alternative labels it states, but failed to support, are "less intrusive." IB 57-59, 36-38; [Appx. II, 29-1, 109-10] (making the argument and relying solely on affidavits from Ocheesee's owners to show the alternatives are less intrusive). Ocheesee misconstrues the absence of analysis of these alternatives by the district court as a holding that "they

24

were not yet ripe." IB 59. That conflates the skim milk ban with the imitation label.

The district court did not address Ocheesee's alternative labels because the *Central Hudson* standard does not require the *least* restrictive means as Ocheesee argues. IB 59 (arguing that the availability of any alternative label is "evidence" of a "less-burdensome" means of achieving the interest). The Supreme Court has "not insisted that there be no conceivable alternative." *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 478 (1989); *see also In re R.M.J.*, 455 U.S. 191, 203 (1982). "None of [its] cases invalidating the regulation of commercial speech involved a provision that went only marginally beyond what would adequately have served the governmental interest." *Id.* at 479. The restrictions disallowed have been "substantially excessive" to the point of wholly "disregarding far less restrictive and more precise means." *Id.* (quotations and citations omitted).

The ban at issue here is not "substantially excessive" because Ocheesee's alternative labels are not "far less" restrictive or "more precise." For example, the two alternatives Ocheesee points to in its Initial Brief continue to use the term "skim milk" in a way that associates, rather than distinguishes between, Ocheesee's product and all other skim milk. IB 58-59 ("Pasteurized Skim Milk, No Vitamin A Added" and "Pasteurized Skim Milk, No Lost Vitamin A Replaced"); *see also* [Appx. II, 29-1, 109-10]. They also fail to capture that either

25

lost vitamins have not been replaced, and are therefore almost absent, or that the vitamins have been "lost" to a "substantial" degree as Ocheesee concedes in its Complaint.  [Appx. I, 1 ¶ 36]. Nor is it "substantially excessive" to limit the label "skim milk" to only those products meeting the standard.  The ban on misappropriating the label "skim milk" proportionally fits the interest in preventing deception.

Ocheesee relies upon language in *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 490-91 (1995) to support its argument that alternative labels defeat any fit.  IB at 57-58.  Fit was not a *Central Hudson* factor that the Court needed to reach in *Rubin*.  The lack of evidence and "irrationality" of the "unique and puzzling regulatory framework" ensured that the challenged labeling ban would "fail to achieve" the asserted interest.  *Rubin*, 514 U.S. at 489; *see also id.* at 488-89.  The ban in *Rubin* was therefore invalidated because of lack of direct advancement and had nothing to do with fit or alternatives.  Any language about alternatives was dicta.  Regardless, the alternatives in *Rubin* were not merely other possible labels, they were alternative regulatory measures.  Merely having to come up with alternate names for something would be an absurd way of invalidating a law.

**D.    If any of those reasons is incorrect, the Court can still affirm**

1.    <u>The ban is incidental to the product's illegality</u>

The ban on labeling a nutritionally inferior product "skim milk" is merely

incidental to the ban on the sale of that product and therefore unprotected under the First Amendment.  "Any First Amendment interest … is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."  *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 389 (1973).  "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language . . .."  *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also Ford Motor Co. v. Texas Dept. of Trans.*, 264 F. 3d 493 (5th Cir. 2001) (upholding any speech restrictions as incidental to the same law's prohibition on Ford retailing motor vehicles – even though Ford's advertisement was "of truthful facts").

Ocheesee's product is *prohibited for sale* for human consumption in Florida because it does not meet the standard of identity for skim milk.  There is no labeling requirement.  Only *incidentally*, is Ocheesee prohibited from labeling its product "skim milk" because Ocheesee cannot sell it in the first place.   What the illegal product can or cannot be called is incidental and unprotected, even if truthful.  Ocheesee need not say *anything* on the label for the prohibition of its product to apply, because it does not meet the standard of identity.

The Supreme Court long ago addressed the validity under the due process

clause of the Fourteenth Amendment of a similar Ohio law that prohibited the sale of condensed skimmed milk unless it was labeled as such. *Hebe Co. v. Shaw*, 248 U.S. 297 (1919). Over a three Justice dissent that saw the issue as labeling, the Court found that the "statute could not direct itself to the product as distinguished from the name more clearly than it does. You are not to make a certain article, whatever you call it except from certain materials." *Id.* at 302. *Hutchinson Ice Cream Co. v. Iowa*, 242 U.S. 153, 159 (1916) (upholding statute "to us merely to prohibit the sale of such compounds [containing less than standard amount of butterfat] as ice cream").

For decades, the courts "have held consistently that the label of a food is not the controlling factor in determining whether under the 1938 Act [the Food, Drug & Cosmetic Act of 1938, 21 U.S.C. § 301, *et. seq.*] an article 'purports' to be a standardized food" and therefore subject to condemnation. *U.S. v. 30 Cases, More or Less, Leader Brand Strawberry Fruit Spread*, 93 F. Supp. 764, 771 (S.D. Iowa 1950) (collecting Supreme Court cases). The Court has "repeatedly sustained the validity of similar provisions" under police power. *Hutchinson Ice Cream*, 242 U.S. at 159; *see also Anderson v. City of Tampa*, 164 So. 546, 678 (Fla. 1935), *on rehearing* (noting that it is "well settled" that ordinance or statute may "prohibit the sale of milk below a certain standard" because of deception and nutrition, in holding it is within police power to set butterfat content for chocolate milk). Any

ban on the label "skim milk" here is likewise incidental (and constitutional under police power) and therefore not protected under the First Amendment.  The district court's order may be affirmed on this additional basis.

## 2.    Interstate commerce

The "introduction or delivery for introduction into interstate commerce" of a misbranded food, or the "receipt [of it] in interstate commerce … and delivery or proffered delivery thereof for pay or otherwise," subjects the product to the jurisdiction of the Food and Drug Administration ("FDA") and the Food, Drug & Cosmetics Act.  21 U.S.C. § 331; *see Palmer v. U.S.*, 340 F. 2d 48, 49 (5th Cir. 1964), *cert. denied* 382 U.S. 903 ("insofar as it constitutionally may do so, Congress divorced intent from culpability"); *U.S. v. Dotterweich*, 320 U.S. 277, 280 (1943).  Ocheesee's products have in fact been found in interstate commerce and therefore, even if the state statutes and rules are invalidated, the federal statutes, regulations, and PMO they incorporate will remain and impose the same requirements upon Ocheesee.  Ocheesee's claims therefore lack redressability and it lacks standing.  Moreover, because the FDA (which has authority with respect to the federal laws) has not been joined, the Court cannot accord complete relief among the parties. *See* Fed. R. Civ. P. 19(a)(1).

Ocheesee's allegations that it does not intend to sell its product across state lines is not sufficient.  At the summary judgment stage, Ocheesee must come forth

with more than an allegation.  *See Morris v. Ross*, 663 F. 2d 1032, 1034 (11th Cir. 1989) (finding repetition of conclusory allegations not enough at summary judgment stage).  Its products readily make their way across the border and there is no evidence in the record that Ocheesee can keep just one of its many products strictly within intrastate commerce, or even what its plan is to keep it out of interstate commerce.  To the contrary, the evidence makes that seem unlikely. Ocheesee's arguments have left open the door to sell all of its *other* products in interstate commerce, IB at 30 (noting that "even if a seller sells some bottles across state lines, the seller's other bottles sold without crossing state lines remain unaffected by any FDA enforcement"), except the one at issue here.  It makes no sense that a dairy can be subject to federal law for all of its products except one.

Moreover, it makes no sense that Ocheesee's nutritionally inferior product can be labeled "skim milk" and sold right next to "skim milk" that is not inferior just because Ocheesee's product was not shipped across state lines.  There is no way for the consumer to know that Brand X, and all of the other brands of "skim milk," meet the federal standard of identity, but Ocheesee's "skim milk" does not. Even more incredible is that if Ocheesee is correct, consumers would not know that Ocheesee's whole milk meets the federal standard of identity, but that same brand's "skim milk" does not.  The district court's order may be affirmed on this additional basis.

30

## II. The District Court Correctly Held that the Compelled Label Issue was Not Yet Ripe and Even if it is Ripe, Final Summary Judgment In Favor of the State and Against Ocheesee Should be Affirmed

The district court never reached the issue of what Ocheesee could or must call its product. The district court correctly held that the issues regarding any compelled label were not yet ripe.[6] [Appx. VIII, 60, 91-92]. The district court cited *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983) and *Malowney v. Fed. Collection Deposit Grp.*, 193 F. 3d 1342, 1346 (11th Cir. 1999). Where there is "no threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury,'" then the court cannot entertain the claim. *Lyons*, 461 U.S. at 111; *Malowney*, 193 F. 3d at 1347 (requiring "a reasonable expectation that the injury they have suffered will continue or will be repeated in the future").

In *Lyons*, it was no more than speculation to assert that the police would act unconstitutionally again in applying chokeholds, or that plaintiff would himself again be the victim of one, or even be arrested in the future and provoke the use of a chokehold. *Lyons*, 461 U.S. at 108-111. The Court therefore held that there was no case or controversy to enjoin unconstitutional chokeholds by police. In *Malowney*, there was no basis to even speculate that the defendant Bank would

---

[6] Again, Ocheesee has not attacked this holding on appeal, *see generally* IB; *id.* at 18, but it is nevertheless addressed here for the Court.

again "wrongfully attempt to have garnishment issued against an account it now knows to contain exempt funds." *Malowney*, 193 F.3d at 1347. The court therefore held that the claim for declaratory judgment failed to satisfy the case or controversy requirement. *Id*. at 1348.

Here too, it is speculative at best to assert that the State would again make the same offer of "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" in negotiation for an imitation milk permit. It would therefore be nothing more than a "gratuitous comment" to declare that compelled speech as applied in the past to Ocheesee was unconstitutional. *Malowney*, 193 F.3d at 1348 (citing *Northern Virginia Women's Medical Center v. Balch,* 617 F.2d 1045, 1049 (4th Cir.1980). Any issue regarding what Ocheesee can or must label its product is not ripe.

If the Court disagrees with the district court that the issue is ripe, summary judgment in favor of the State and against Ocheesee on the compelled speech issue should still be affirmed. The "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" label is constitutional and was part of a label Ocheesee had already accepted anyway. Only incidentally, as an alternative to its outright prohibition, was Ocheesee's product to be called "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." There is no First Amendment interest. *E.g. Pittsburgh Press,* 413 U.S. at 389. Ocheesee's challenge also fails on the merits

under either the *Zauderer* standard[7] or the *Central Hudson* standard.  Particularly,

because disclosure "trench[es] much more narrowly" and a speaker's interests are

"minimal."  The forced speech might even *be* the direct advancement and tailoring

under *Central Hudson.  See e.g.*, *Peel v. Attorney Registration & Disciplinary*

*Comm'n of Ill.,* 496 U.S. 91, 110 (1990) (positing that "a State might consider ...

requiring a disclaimer" to cure potentially misleading statements).

    "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed"

appropriately explains what Ocheesee's product is in a way that distinguishes it

from skim milk to avoid the particular deception involved in using that term.

Ocheesee's product is accurately "Non-Grade 'A'" because it does not meet the

standard of identity and is therefore not Grade 'A.'  Fla. Stat. § 502.014(5); Fla.

Admin. Code Rule 5D-1.001(1).  It is accurately a "Milk Product" because it is a

product of milk, made by processing milk into something different.  *See also* §

502.012(13), Fla. Stat. (definition of "milk product"); PMO at s. 1, X, at p.6

(definition of "milk products").  Even Ocheesee uses the term "milk product" on all

of its bottles. [Appx I, 28-5, 200-01] (picture of Ocheesee's bottles).  Finally,

---

[7] Under *Zauderer*, compelled commercial speech, or disclosures, need only be
"reasonably related to the State's interest in preventing deception of consumers."
*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S.
626, 650 (1985); *Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229,
250 (2010) (upholding disclosure requirement as "reasonably related to the State's
interest in preventing deception").

33

"Natural Milk Vitamins Removed" is accurate because the vitamins naturally found in milk are removed by skimming off the cream.  Ocheesee's complaint is unpersuasive that the statement is not perfect because not *all* vitamins are removed – water soluble vitamins, like niacin or vitamin B6[8], remain.  To the extent a reasonable consumer expects vitamins in her milk, however, she likely does not expect those vitamins.[9]  The consumer expects the vitamins contained in the cream that is skimmed off of Ocheesee's product – vitamins A and D.  *See* [Appx. I, 28-4].  Moreover, "Natural Milk Vitamins Removed" is precise because the removal of those vitamins is exactly why Ocheesee's product is a "Milk Product" and not Grade 'A.'

Regardless, that label was part of Ocheesee's offer that the State accepted. [Appx. I, 52-1, 228-30] (letters with Ocheesee's "Alternative #5" and the State's acceptance of it).  Ocheesee offered several "alternative" options for a label. [Appx. I, 52-1, 227-28].  One of those options was "Alternative #5" stating: "The State requires us to call this: 'Non-Grade 'A' Milk Product, Natural Milk Vitamins

[8] USDA, Agricultural Research Service, National Nutrient Database for Standard Reference Release 27, Basic Report: 01211, Milk, whole, 3.25% milkfat, without added vitamin A and vitamin D, *available at*: http://ndb.nal.usda.gov/ndb/foods/show/180?manu=&fgcd= (last accessed June 5, 2015).

[9] Indeed, milk is not a major source of most of the water soluble vitamins it contains.  *Compare id.* with 21 C.F.R. § 101.9(c)(8)(iv) (setting RDIs for essential vitamins in context of food labeling).

Removed.' It is All-Natural Skim Milk with Some Vitamin A Removed By Skimming Cream From Milk." [Appx. I, 52-1, 228]. The State accepted it with minor changes to the additional language that was part of Ocheesee's "third" claim it never pursued.[10] [Appx. I, 52-1, 229]. Ocheesee decided to challenge the "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" portion of the label anyway. But Ocheesee cannot now claim that label is unconstitutional; the label was at one time acceptable to Ocheesee.

The issue of what Ocheesee can or must label its product was never reached by the district court because it was not yet ripe. Ocheesee has waived any argument that the holding was in error but, the holding is nevertheless correct. Moreover, the label "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed," is constitutional and was part of an offer Ocheesee itself made. The district court's holding granting summary judgment in favor of the State on this issue should be affirmed.

---

[10] The changes to the additional language were: It is All-Natural Skim Milk with ~~Some Vitamin A~~ <u>Vitamins</u> Removed By ~~Skimming~~ <u>Separating</u> Cream From Milk. All fat-soluble vitamins are removed to the same extent the fat is removed. That includes more than just the vitamin A Ocheesee wanted to disclose. Moreover, Ocheesee has maintained that its customers know exactly what vitamins are in, and therefore removed with, the cream, and which ones are not – that it is a matter of "common sense." *See* [Appx. VII, 50, 160-61]. It is difficult then, to see how they would be confused about *which* "vitamins" are removed "by separating the cream" in the State's offered label.

## CONCLUSION

The Court should affirm the district court's order granting summary judgment in favor of the State and against Ocheesee.

Respectfully Submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

/s/ Ashley E. Davis
**JONATHAN A. GLOGAU**
Chief, Complex Litigation
Fla. Bar No. 371823
**ASHLEY E. DAVIS**
Assistant Attorney General
Fla. Bar No. 48032
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300, ext. 4660

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), the State certifies that this brief complies with the type-volume limitation because it contains few than 14,000 words. As calculated by Microsoft Word 2010 word count software, this brief contains 8312 words.

Counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced 14-point Times New Roman typeface using Microsoft Word 2010.


/s/ Ashley E. Davis
Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 25, 2015, I electronically filed the

foregoing document with the Clerk of Court using CM/ECF. I also certify that the

foregoing document is being served this day on all counsel of record identified via

transmission of Notices of Electronic Filing generated by CM/ECF, and that all

parties are represented by counsel below who are authorized to receive electronic

Notices of Filing.

Justin Pearson
jpearson@ij.org
Ari Bargil
abargil@ij.org

*Counsel for Appellant*

I further certify that on August 25, 2016, I caused the required number of

bound copies of the foregoing Answer Brief to be filed via UPS Next Day Air with

the Clerk of this Court.


<u>/s/ Ashley E. Davis</u>
Attorney

38